UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERTHA MAE TOUSSAINT,

          Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

_____/

Case No. 10-14827

Robert H. Cleland
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 12)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On December 6, 2010, plaintiff filed suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Robert H. Cleland referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 9, 12).

    B.   Administrative Proceedings

Plaintiff filed the instant claims on July 9, 2007, alleging that she became

unable to work on March 17, 2007.  (Dkt. 75, Pg ID 130-142).  The claim was

initially disapproved by the Commissioner on January 30, 2008.  (Dkt. 7-4, Pg ID

82-90).  Plaintiff requested a hearing and on September 22, 2009, plaintiff

appeared with counsel before Administrative Law Judge (ALJ) Mary Ann

Poulose, who considered the case *de novo*.  In a decision dated May 27, 2010, the

ALJ found that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 27-, Tr. at 30-39).

Plaintiff requested a review of this decision on July 20, 2010.  (Dkt. 7-2, Pg ID

23).  The ALJ's decision became the final decision of the Commissioner when,

after the review of additional exhibits[1] (Dkt. 7-2, Pg ID 21-22), the Appeals

Council, on November 5, 2010, denied plaintiff's request for review.  (Dkt. 7-2, Pg

ID 18-20).

   For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 45 years of age at the time of the most recent administrative

hearing.  (Dkt. 7-2, Pg ID 37).  Plaintiff's relevant work history included

approximately 10 years as a certified nurse's assistant, a fast food manager, a sales

clerk, and a stocker.  (Dkt. 7-6, Pg ID 167, 174).  In denying plaintiff's claims,

defendant Commissioner considered heart, stroke, left knee, high blood pressure,

diabetes, high cholesterol as possible bases of disability.  (Dkt. 7-6, Pg ID 166).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

March 27, 2007.  (Dkt. 7-2, Pg ID 32).  At step two, the ALJ found that plaintiff's

coronary artery disease and complex regional pain syndrome impairments were

"severe" within the meaning of the second sequential step.  *Id*.  At step three, the

ALJ found no evidence that plaintiff's combination of impairments met or equaled

one of the listings in the regulations.  (Dkt. 7-2, Pg ID 33).  At step four, the ALJ

found that plaintiff could not perform her previous work as a certified nurse's

assistant, a fast food manager, a sales clerk, and a stocker.  (Dkt. 7-2, Pg ID 37).

At step five, the ALJ denied plaintiff benefits because plaintiff could perform a

significant number of jobs available in the national economy.  *Id*.

B.      Plaintiff's Claims of Error

According to plaintiff, the ALJ did not properly assess her credibility and complaints of pain.  In addition, plaintiff claims that the ALJ failed to give proper weight to plaintiff's treating physician and the state agency psychiatrist.  Finally, plaintiff asserts that the ALJ failed to properly assess plaintiff's depression and mental limitations.

C.      Commissioner's Motion for Summary Judgment

The ALJ found that plaintiff had a severe combination of impairments that included coronary artery disease and complex regional pain syndrome.  (Tr. 15). According to the Commissioner, the ALJ reasonably found that these impairments imposed numerous limitations on her ability to work and restricted her to a range of sedentary work that accommodated a sit/stand option, required only occasional climbing, balancing, stooping, kneeling, crouching and crawling, and limited her to unskilled work.  (Tr. 17).  The ALJ then properly relied on vocational expert testimony to determine that plaintiff could perform a significant number of other jobs despite these limitations and, therefore, she was not disabled during the relevant period.  (Tr. 21).

The Commissioner urges the Court to reject plaintiff's argument that the ALJ did not consider her need to use a cane, her need to lie down with her feet elevated, and her allegations of hand limitations.  According to the Commissioner,

the claimed need for a cane was properly rejected because the ALJ considered not only the objective medical evidence, but all other evidence of record, before concluding that her statement that she required a cane was not fully credible. (Tr. 18-20). The ALJ ultimately concluded the longitudinal evidence did not support the alleged need for a cane and Dr. Maddox's (despite saying that plaintiff required a cane) own treatment notes made no mention of a gait imbalance. (Tr. 19). Additionally, the ALJ acknowledged the consultative examiner's observation of slightly antalgic gait (Tr. 250), but noted that the examining physician did not find cane use necessary to assist with ambulation. (Tr. 19).

The Commissioner also asserts that the Court should reject plaintiff's argument that the ALJ erred in failing to give reasons for rejecting the 2009 opinion of her primary care physician, Dr. Maddox. According to the Commissioner, the ALJ explained that the objective medical evidence, Dr. Maddox's own progress notes, and other physician's notes failed to support the extreme limitations stated in this opinion. (Tr. 19). She reasoned that Dr. Maddox's own treatment notes did not explain why a cane was needed, and failed to reference any gait imbalance necessitating such a device. (Tr. 19). The ALJ also noted that, although Dr. Maddox assigned hand limitations, his progress notes did not indicate any hand-related complaints, impairments, or limitations consistent with this opinion. According to the Commissioner, the ALJ correctly

observed that this treating source's notes did not reveal any significant laboratory or clinical findings that supported such limitations. (Tr. 19).

Additionally, Dr. Maddox's limitations were not consistent with other medical opinions. In December 2007, state reviewing physician Christopher Connors reviewed the medical evidence and opined that plaintiff was capable of lifting/carrying up to 10 pounds frequently and occasionally, standing/walking for up to 6 hours in an 8-hour workday, sitting for up to 6 hours in an 8-hour workday, and pushing and pulling without limitation. (Tr. 255). Dr. Connors additionally opined that plaintiff could perform all postural activities (climbing, balancing, stooping, etc.) on an occasional basis. (Tr. 256).

The Commissioner also urges the Court to reject plaintiff's argument that the ALJ's mental RFC finding failed to account for all of her limitations and erroneously factored in a reference to malingering in the record. The Commissioner points to treating psychiatrist Richard Balon's September 2009 progress notes, the diagnostic impression included major depressive disorder and a notation regarding ruling out malingering. (Tr. 365). Dr. Balon had previously noted in June 2009 that plaintiff's psychotic symptoms were "not too impressive" despite her attempts to "put lot of emphasis on her psychotic symptoms" in order "to convince the writer how debilitating it was to her." (Tr. 373). The Commissioners asserts that it was entirely appropriate for the ALJ, based on this

report, to find that the medical evidence suggested plaintiff's exaggeration of her depressive symptoms and alleged limitations. (Tr. 15-16). The Commissioner also asserts that nothing in Dr. Balon's mental status examination report supported such extreme limitations. Plaintiff denied having hallucinations or homicidal or suicidal ideation. (Tr. 373). She had logical, goal-directed thought processes, exhibited good concentration, and fair judgment. (Tr. 373). Moreover, Dr. Balon noted that a low dose Abilify decreased her psychotic symptoms. (Tr. 364).

The Commissioner also points out that plaintiff did not seek mental health treatment until she was in the appeal stages of her disability claim. (Tr. 372). Similarly, in January 2008, state reviewing psychologist Dr. Tripp opined that plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, as well as respond appropriately to work changes, but was able to perform simple, sustained, unskilled tasks with persistence. (Tr. 267-69). To the extent plaintiff raised credible allegations, the Commissioner contends that the ALJ reasonably accommodated them by limiting plaintiff to a range of sedentary work that accommodated numerous limitations for her physical and mental impairments.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

Report and Recommendation
Cross-Motions for Summary Judgment
*Toussaint v. Comm'r*; Case No. 10-14827

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001). When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc.

Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.  Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

        "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusion

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"  *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  "The

opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003). Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

The Social Security Administration regulation details how to satisfy this requirement for resolving medical record ambiguities:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report

from your medical source contains a conflict or
ambiguity that must be resolved, the report does not
contain all the necessary information, or does not appear
to be based on medically acceptable clinical and
laboratory diagnostic techniques. We may do this by
requesting copies of your medical source's records, a
new report, or a more detailed report from your medical
source, including your treating source, or by telephoning
your medical source. In every instance where medical
evidence is obtained over the telephone, the telephone
report will be sent to the source for review, signature and
return.

20 C.F.R. § 404.1512(e)(1); *see e.g.*, *Rogers v. Astrue*, 2011 WL 4479524 (E.D.

Tenn. 2011) (where treating physician's notes are illegible, seeking a supplemental

evaluation from the treating physician was deemed to satisfy the "recontacting"

requirement); *see also* 20 C.F.R. § 404.1527(c); *Sims v. Apfel*, 530 U.S. 103,

110-111 (2000) (The ALJ has a duty to investigate the facts and develop the

arguments both for and against granting benefits.); *D'Angelo v. Soc. Sec. Comm'r*,

475 F.Supp.2d 716 (W.D. Mich. 2007) (Where an ALJ discounts the opinions of a

treating physician because the record includes virtually no medical records of

plaintiff's treatment with that physician, the ALJ should perform a further

investigation pursuant to SSR 96-5p.).

The Sixth Circuit has described a two-part test from Social Security Ruling

96-5p, which parallels the requirements in § 404.1512(e).  First, the evidence in

the record must not support the treating physician's opinion.  *Ferguson v.*

*Comm'r*, 628 F.3d 269, 273 (6th Cir. 2010); *see also Lovelace v. Astrue*, 2011 WL
2670450 (E.D. Tenn. 2011). Second, the ALJ must be unable to ascertain the
basis of the opinion from the evidence in the record. *Id*. In *Ferguson*, the Sixth
Circuit determined that the second prong of the test was not met because the ALJ
explained that the applicable physician's opinion was based on self-reported
history and subjective complaints, not on objective medical evidence. *Id*. The
Sixth Circuit noted that "to the extent the ALJ 'rejected' Dr. Erulkar's 'opinion of
disability,' he did so not because the bases for her opinion were unclear to him,
but because those bases, Ferguson's self-reported history and subjective
complaints, were not supported by objective medical evidence." *Id*.

In this case, Dr. Maddox completed a "Medical Source Statement of Ability
to do Work-Related Activities (Physical)" on November 9, 2009. (Dkt. 7-8, Pg ID
412-417). The ALJ assigned little weight to Dr. Maddox's opinions because the
limitations he imposed on plaintiff were not supported by the objective medical
evidence, his progress notes, or the observations by other medical professionals.
The ALJ specifically noted that Dr. Maddox's treatment notes do not mention (1)
that plaintiff has a gait imbalance, warranting the use of a cane, and (2) that
plaintiff had any hand-related complaints or impairments. While not specifically
mentioning Dr. Maddox's notes, the ALJ also pointed out that no treating source
(1) imposed any lifting restriction; (2) noted any fine or gross manipulation

limitation; (3) indicated that plaintiff had a need to nap daily; (4) indicated that plaintiff needed to use a scooter or an oxygen tank.

The difficulty in evaluating whether the appropriate weight was given to Dr. Maddox's opinion is that his treatment notes are largely illegible. Dr. Maddox treated plaintiff regularly over the course of three years. (Dkt. 7-8, Pg ID 344-384). Yet, none of his treatment notes are legible, except for those few instances where reports were typed when plaintiff was admitted to the hospital. No office notes are decipherable. The ALJ specifically concluded, however, that there was no evidence in Dr. Maddox's treatment notes to support plaintiff's claim she required a cane, that he had never noted any problems with her gait, that there was no support for her claims of difficulty with her hands, and that there was no evidence that she had COPD or other pulmonary problems. The undersigned is unable to determine if those conclusions are at all accurate or supported by the record because all of the office notes are illegible.

The undersigned is, therefore, also concerned about how the ALJ reached the conclusion that none of complaints or symptoms and ultimately, Dr. Maddox's 2009 opinion, were supported in his treatment notes and records. In the view of the undersigned, without more information about the content of Dr. Maddox's treatment notes, the ALJ could not have conducted the required analysis to determine whether their opinions should be given controlling weight and the

undersigned is unable to determine whether those opinions were properly rejected. It certainly appears that the first prong of the *Ferguson* test is satisfied, given the ALJ's conclusion that Dr. Maddox's opinion was not supported by the record. As to the second prong, while the ALJ did not reject the opinion because he was unable to ascertain the basis of the opinion from the given, the undersigned concludes that this must be so since those notes are wholly illegible. This situation is distinguishable from that presented in *Ferguson* where the bases of the rejected treating physician opinion were, in fact, clear to the ALJ and anyone reviewing the record. This situation is also unlike that presented in *Poe v. Comm'r*, 342 Fed.Appx. 149, 156-157 (6th Cir. 2009), where the opinion at issue was contradicted by two other treating physicians. The undersigned also points out that the consulting examination on which the ALJ relied to support the limitations in the RFC occurred in November 2007, a point in time when Dr. Maddox had only been treating plaintiff for approximately five months. Dr. Maddox's 2009 opinion would have, presumably, been based on another 18 months of treatment. This further undermines the reliability of the ALJ's analysis regarding Dr. Maddox's opinions.

The regulation requires the ALJ to give good reasons for the weight given to the treating source's opinion and, if this procedural requirement is not met, a remand may be required even if the decision is otherwise supported by substantial

Report and Recommendation
Cross-Motions for Summary Judgment
*Toussaint v. Comm'r*; Case No. 10-14827

evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004). Here the ALJ discounted the opinions of plaintiff's primary treating physician, and on its face, the ALJ's conclusions, if accurate, support the rejection of Dr. Maddox's opinions. However, as set forth above, there is simply no way for the undersigned to evaluate whether the ALJ correctly analyzed Dr. Maddox's records because they are illegible. While the plaintiff bears the burden of establishing disability, the ALJ also has a duty to fully develop the record. *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits); *see also*, *Miller v. Heckler*, 756 F.2d 679 680-81 (8th Cir. 1985) (illegibility of important evidentiary material can warrant a remand for clarification and supplementation.); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) (illegible medical reports provide reviewing court with no way to determine whether the Secretary fully understood the medical evidence before him). Under these circumstances, a remand to supplement and clarify Dr. Maddox's treatment notes and opinions is warranted and appropriate.

Much of the ALJ's analysis focused on plaintiff's credibility. To be sure, there appeared to be significant reasons in the record to doubt plaintiff's credibility, particularly as it related her mental limitations. However, the credibility analysis should be reconsidered, given the need to obtain clarification

of and reexamine the treating physician evidence, the rejection and inadequacy of which was used extensively in the ALJ's credibility examination.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Report and Recommendation
Cross-Motions for Summary Judgment
*Toussaint v. Comm'r*; Case No. 10-14827

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

|  |  |
|---|---|
|  | s/Michael Hluchaniuk |
| Date:  February 1, 2012 | Michael Hluchaniuk |
|  | United States Magistrate Judge |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 1, 2012, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: <u>Kenneth F. Laritz, Andrew J. Lievense, AUSA, and
the Commissioner of Social Security</u>.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Toussaint v. Comm'r*; Case No. 10-14827